UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
MARIA GALVEZ, GABRIELA CHAMPANO,
GLORIA HURTADO, MARIA TERREROS, and DEISY
SARMIENTO on behalf of themselves and all others
similarly situated,

                    *Plaintiffs*,

     -against-

HECTOR DELGADO, LINDA DELGADO,
JEANETTE DELGADO-SAVINO, THE
DELGADO TRAVEL AGENCY, INC.,
and CASA DE CAMBIO DELGADO, INC.,

                    *Defendants*.
------------------------------------------------------------X

**COMPLAINT**

**Plaintiffs Request Trial by Jury**

**ECF case**

**08-cv-5832**

Judge
Magistrate Judge

     Plaintiffs allege that:

## FIRST CLAIM
### (violation of the overtime provisions of the FLSA)

1. Plaintiffs are former employees of The Delgado Travel Agency, Inc. ("Delgado Travel.")

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, and jurisdiction over plaintiffs' Fair Labor Standards Act ("FLSA") claims pursuant to 29 U.S.C. § 216(b).

3. The venue of this action is properly placed in the Southern District of New York pursuant to 28 U.S.C. §1391 (b) and (c) because, upon information and belief, defendants Casa de Cambio Delgado Inc. ("Casa de Cambio") and Delgado Travel are duly incorporated in New York and maintain offices doing business in the Southern District of New York.

1

4. This Court has jurisdiction over defendants because they conduct business in New York.

5. Plaintiff Maria Galvez ("Galvez") is a resident of Suffolk County, New York.

6. Galvez worked for Delgado Travel from September 2003 until February 2006.

7. Galvez worked at several Delgado Travel locations throughout New York City.

8. Plaintiff Gabriela Champano ("Champano") is a resident of the State of New Jersey.

9. Champano worked for Delgado Travel as a travel agent from in or about September 2004 until in or about April 2007.

10. Champano worked at various Delgado Travel locations throughout New York City and New Jersey.

11. Plaintiff Gloria Hurtado ("Hurtado") is a resident of Queens County, New York.

12. Hurtado worked for Delgado Travel as a travel agent from in or about 1997 through August 2003.

13. Plaintiff Maria Terreros ("Terreros") worked for Delgado Travel from in or about May 2002 until in or about July 2007 as a supervisor.

14. Plaintiff Deisy Sarmiento ("Sarmiento") is a resident of the State of Florida.

15. Sarmiento worked for Delgado Travel as a cashier from in or about March 2001 until in or about February 2008.

16. Sarmiento worked at the Delgado Travel location in Union City, New Jersey throughout her period of employment with Delgado Travel.

17. Upon information and belief, Delgado Travel is a travel agency that currently employs in excess of two hundred people with offices in approximately 31 locations in the New York City Metropolitan area.

18. Upon information and belief, Casa de Cambio is a subsidiary corporation of Delgado Travel located within the physical facilities of Delgado Travel and engaged in the business of money transfer services.

19. Upon information and belief, Casa de Cambio's operations have been combined with Delgado Travel's operations, and all employees of both corporations are employed solely by Delgado Travel.

20. The President and sole shareholder of both Delgado Travel and Casa de Cambio is Hector Delgado ("Delgado").

21. The two Vice Presidents of Delgado Travel are Delgado's two daughters – Linda Delgado ("Linda") and Jeanette Delgado-Savino ("Jeanette").

22. Upon information and belief, Delgado, Linda, and Jeanette are all residents of New York State.

23. Upon information and belief, Delgado, Linda, and Jeanette are the directors of Delgado Travel.

**Plaintiffs' employment at Delgado Travel and Casa de Cambio**

24. Delgado Travel had a "policy" of giving its employees 45 minute lunch breaks on Monday through Friday and 30 minute lunch breaks on Saturdays and Sunday.

25. However, plaintiffs and the other Delgado Travel employees rarely took their lunch breaks because Delgado Travel officials required them to work through lunch.

26. Throughout the course of her employment with Delgado Travel, plaintiff Galvez usually worked from 8:50 a.m. to 9:00 p.m. or 10:00 p.m. Monday through Friday, and from 9:00 a.m. to 6:00 p.m. on Saturday, an average of approximately 69 hours per week.

27. Throughout the course of her employment with Delgado Travel, plaintiff Champano usually worked from 8:50 a.m. to 8:00 p.m., six days per week, an average of approximately 64 hours per week.

28. Throughout the course of her employment with Delgado Travel, plaintiff Hurtado usually worked from 8:50 a.m. to 8:30 p.m. Monday through Friday and from 8:50 a.m. to 6:30 p.m. or 7:00 p.m.

29. In addition, Delgado Travel had approximately six "promotional periods" each year when Hurtado had to work from 8:50 a.m. to 9:30 p.m. six days a week for two weeks.

30. Thus, Hurtado worked an average of approximately 68 hours per week throughout her course of employment with Delgado Travel.

31. However, throughout the course of her employment with Delgado Travel, Delgado Travel issued Hurtado a weekly paycheck reflecting only 58 hours per week – 40 hours at Hurtado's alleged regular wage rate, and 18 hours at Hurtado's alleged overtime wage rate.

32. Throughout the course of her employment with Delgado Travel, plaintiff Terreros worked the following hours:

   a. From May 2002 until August 2002, Terreros worked from 9:00 a.m. until 8:30 p.m Monday through Friday and 9:00 a.m. until 6:00 p.m. on Saturdays, an average of approximately 61 hours per week;

   b. From August 2002 until November 2002, Terreros worked from 8:50 a.m. until 6:30 p.m. six days per week, an average of approximately 54 hours per week;

   c. From November 2002 until July 2006, Terreros worked from 8:50 a.m. until 8:30 p.m Monday through Friday and 8:50 a.m. until 6:30 p.m. on Saturdays, an average of approximately 68 hours per week;

4

      d. From July 2006 until July 2007, Terreros worked from 7:50 a.m. until 6:15 p.m three days per week; from 9:00 a.m. to 7:30 p.m. two days per week; and from 7:50 a.m. until 4:30 p.m. one day per week, an average of approximately 58 hours per week.

33. From January 2002 until December 2003, plaintiff Sarmiento usually worked from 8:50 a.m. to 8:00 p.m. Monday through Friday and 8:50 a.m. to 7:00 p.m. on Saturdays, an average of approximately 66 hours per week.

34. Throughout the remaining time of her employment at Delgado Travel, Sarmiento usually worked from 8:50 a.m. to 8:00 p.m. Monday through Friday and 8:50 a.m. to 6:00 p.m. on Saturdays, an average of approximately 62 hours per week.

35. Delgado Travel paid each employee, including plaintiffs, the same amount every week for the fixed number of hours it scheduled for each employee, *i.e.*, 40 hours of base pay (at the employee's regular hourly rate) and a fixed number of "overtime" hours (usually either 18, 19.25 or 20, depending on the individual employee.)

36. Delgado, Linda, Jeanette, or other officials of Delgado Travel uniformly required plaintiffs and other current and former travel agent and cashier employees of Delgado Travel ("the employees") to work weekly hours well beyond the hours for which plaintiffs and the employees were scheduled and well beyond the hours for which plaintiffs and the employees were paid.

37. Therefore, plaintiffs and the employees almost always worked more hours than their scheduled hours, but were never paid for their actual hours worked above their scheduled hours.

38. Delgado Travel's former General Manager, Gloria Perez, testified that "no employees were ever paid for more than their scheduled hours."

39. On April 30, 2008 Linda testified that Delgado Travel still pays employees based on scheduled hours.

40. Thus, Delgado Travel actually paid plaintiffs and the employees a weekly salary rather than an hourly wage.

41. Delgado Travel supervisor, Isabel Chaparro, testified as follows, that employees' raises are based on a weekly salary:

> Q. And when you receive notice of a raise . . . you adjust the gross pay by that [amount of the raise] or do you do something else?
> ***
> A. Let's say that the gross is $800 a week. And they increase $50. So I add to the $800 the $50 to [equal] $850. . . .

42. Since plaintiffs' Delgado Travel pay stubs reflected an hourly rate based on scheduled hours rather than hours actually worked, the hourly rate noted on their paychecks was not plaintiffs' actual hourly rate of pay.

43. To arrive at the regular hourly rate of pay when an employer pays a salary, as Delgado Travel does here, an employer must divide the amount of an employee's paycheck by the number of hours the employee actually worked during the period of time covered by the paycheck; the resulting regular rate of pay then must be multiplied by 1.5 to arrive at an employee's overtime rate of pay.

44. Since Delgado Travel calculated the employees' regular hourly rates based on a fixed number of hours, not on the hours actually worked by each employee, the employees were paid an hourly rate below the rate that Delgado Travel was legally required to pay plaintiffs and the employees.

45. Upon information and belief, Delgado Travel calculated its employees' regular hourly rates as follows:

6

    a. first, it multiplied the employee's scheduled number of "overtime" hours (usually 19.25 or 20) by 1.5, then it added that number to the employee's 40 regular hours (the "first calculation");

    b. then, the scheduled weekly amount Delgado Travel paid each employee was divided by the number resulting from the first calculation to determine an employee's "regular" hourly rate of pay;

    c. finally, Delgado Travel multiplied the "regular" hourly rate of pay by 1.5 to give the employee's "overtime" rate of pay, and these rates of pay were used to calculate the employee's weekly paychecks.

46. Thus, Delgado Travel's payroll supervisor, Isabel Chaparro, testified as follows:

> Q. Lets say an employee is making a thousand dollars a week . . . and you receive a note or authorization that you're going to give that employee a $500 a week raise. How do you do that?
>
> A. Okay. The increase is $500. So I add to the gross, the $500. It's coming [to] $1500. Then he works 40 hours regular, 20 overtime. And half the time, you know, extra time, which is 70 hours. I divide $1500 by 70—his hourly rate is $21.43.

47. Since Delgado Travel's calculations did not recognize hours over the scheduled hours that plaintiffs or the employees worked, Delgado Travel did not pay plaintiffs or the employees the proper regular hourly rate for the 40 regular hours noted on plaintiffs' and the employees Delgado Travel pay stubs.

48. Since Delgado Travel's calculations did not recognize hours over the scheduled hours that plaintiffs or the employees worked, Delgado Travel did not pay plaintiffs or the employees the proper overtime rate as required by law for the hours of overtime noted on their Delgado Travel pay stubs.

49. Not only did Delgado Travel fail to properly calculate its employees' rates of pay for the regular and overtime hours noted on the employees' paychecks, it did not pay them for the overtime hours worked beyond the number of hours noted on the employees' paychecks.

50. Prior to approximately March 2006, Delgado Travel did not even maintain records reflecting hours actually worked by non-exempt employees, as required by the FLSA.

51. In or about March 2006, Delgado Travel began keeping records that reflected the hours actually worked by non-exempt employees (the "timekeeping records.")

52. But, Delgado Travel did not use the timekeeping records to calculate plaintiffs' or the employees' weekly paychecks.

53. Upon information and belief, Delgado, Linda, or Jeanette instructed Delgado Travel officials to pay overtime compensation to plaintiffs and the employees based on their scheduled hours, and not for the number of hours they actually worked.

54. Upon information and belief, all Delgado Travel locations were open on legal holidays, except on Christmas and New Years Day.

55. When plaintiffs and the employees worked on legal holidays, Delgado Travel did not pay them the overtime rate (1.5 times employee's regular rate); instead, for legal holidays, Delgado Travel paid them their regular rates for scheduled hours.

### FLSA Collective Action Allegations

56. Plaintiffs bring their FLSA overtime and liquidated damages claims as a collective action pursuant to FLSA § 216(b), 29 U.S.C. § 216(b), on behalf of all persons who are or were employed by Delgado Travel, as travel agency and money exchange or cashier employees (the "FLSA class"), on or after the date that is three years before the filing of the complaint in this case ("FLSA class period").

57. At all relevant times, plaintiffs and other members of the FLSA class who are or have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject to Delgado Travel's common practices, policies, programs, procedures,

protocols, and plans of willfully failing and refusing to pay them at a rate of one and one-half times their regular rates for hours worked in excess of 40 hours per week or on legal holidays, and willfully failing to keep records as required by the FLSA; the claims of plaintiffs stated herein are similar to those claims of the other members of the FLSA class.

58. Delgado Travel is an "employer" under the FLSA because they are corporations that employ individuals in an occupation, business, or service.

59. Delgado, Linda, and Jeanette are "employer[s]" under the FLSA, and are individually liable because they, individually or collectively, had the power to hire and fire employees, supervised and controlled the conditions of employment, and determined the rates and methods of payment.

60. Delgado Travel intentionally failed to pay plaintiffs and the FLSA class members overtime rates of one and one-half times the regular scheduled rate for each hour worked over 40 in a workweek, in violation of 29 U.S.C. § 207(a)(1).

61. Delgado Travel's failure to pay plaintiffs and the FLSA class members overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

62. By reason of the foregoing, plaintiffs are entitled to relief as follows.

    a. Galvez: approximately $4,135.00 of unpaid overtime premiums and unpaid overtime wages, and $4,135.00 of liquidated damages for total damages of approximately $8,270.00, plus interest;

    b. Champano: approximately $11,160.00 of unpaid overtime premiums and unpaid overtime wages, and approximately $11,160.00 of liquidated damages for total damages of approximately $22,320.00, plus interest;

    c. Sarmiento: approximately $12,830.00 of unpaid overtime premiums and unpaid overtime wages, and approximately $12,830.00 of liquidated damages, for total damages of approximately $25,660.00, plus interest;

    d.   Terreros: approximately $10,375.00 of unpaid overtime premiums and unpaid overtime wages, and approximately $10,375.00 of liquidated damages, for total damages of approximately $20,750, plus interest;

    e.   The costs of this litigation, including attorney's fees; and

    f.   Such other and further relief as this Court deems just and equitable.

63.    Each of the FLSA class members has been damaged in an amount to be determined at trial.

## SECOND CLAIM
### (violation of the overtime wages provisions of the New York Labor Law)

64.    Plaintiffs, except for plaintiff Sarmiento (the "New York plaintiffs"), repeat and re-allege paragraphs 1 through 60 above as though fully set forth herein.

65.    The New York plaintiffs sue on their own behalf and on the behalf of a class of persons similarly situated under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

66.    The New York plaintiffs bring their New York Labor Law ("NYLL") §190, *et seq.* overtime claims on their own behalf and on behalf of all the employees who worked for Delgado Travel in New York State, on or after the date that is six years before the filing of the complaint in this action, to entry of judgment in this action (the "NYLL class").

67.    The New York plaintiffs meet the prerequisites to bringing this action on behalf of the NYLL class under Rule 23 because:

    a.   Numerosity: upon information and belief, the NYLL class is so numerous that the New York joinder of all members as individual plaintiffs is impracticable. While the exact number of class members is unknown, and can only be obtained through discovery, plaintiffs believe there are more than 600 other members of the NYLL class who were affected by Delgado Travel's unlawful compensation policies;

    b.   Commonality: there are questions of law and fact common to the New York class, including whether Delgado Travel violated the NYLL by refusing to pay plaintiffs and the NYLL class members proper regular hourly rate, proper overtime hourly rates, and for all hours plaintiffs and the NYLL class members actually worked;

      c. Typicality: the New York plaintiffs' claims are typical of the NYLL class because plaintiffs and the NYLL class members were each underpaid as a result of Delgado Travel's unlawful compensation policies; and

      d. Adequacy: the New York plaintiffs will fairly and adequately protect the interests of the NYLL class because they have no interests that are antagonistic to, or in conflict with, the interests of the NYLL class as a whole, and the New York plaintiffs have engaged competent counsel to ensure protection of the interests of the NYLL class as a whole.

68.    This action is suited for class certification under Rule 23(b)(3) because questions of law and fact common to members of the class predominate over any questions affecting only individual members, such as:

      a. Did Delgado Travel fail in its duty to maintain proper time records;

      b. Did Delgado Travel have a policy or practice of not paying the New York plaintiffs and the employees legally-required regular hourly rates and overtime rates;

      c. Did Delgado Travel have a policy or practice of not paying the New York plaintiffs and the New York class for all hours actually worked;

      d. Whether Delgado Travel failed or refused to pay the New York plaintiffs and the NYLL class spread of hours pay; and

      e. What were the common conditions of employment in the workplace, such as recordkeeping, clock-in procedures, breaks, and any other policies or practices that affected whether the New York plaintiffs and the NYLL class were paid proper wages for the hours they actually worked.

69.    Furthermore, a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants, and the damages suffered by individual class members are small compared to the expense and burden of individual prosecution of this litigation.

70. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

71. Delgado Travel is an "employer" under the NYLL because they are corporations that employ individuals in an occupation, business, or service.

72. Delgado, Linda, and Jeanette are "employer[s]" under the NYLL, and are individually liable because they, individually or collectively, had the power to hire and fire employees, supervised and controlled the conditions of employment, and determined the rates and methods of payment.

73. Defendants willfully violated NYLL §§ 650 *et seq.* by willfully failing to pay plaintiffs and the putative NYLL class members overtime compensation at a rate of one and one-half times the respective employee's regular scheduled rate of pay for each hour worked in excess of 40 hours in a single workweek and for hours worked on legal holidays.

74. Defendants willfully violated 12 N.Y.C.R.R. § 142-2.6 by not maintaining proper records reflecting hours actually worked by non-exempt employees, and by not referring to such records of actual hours worked in determining how much to pay the New York plaintiffs and the NYLL class members.

75. By reason of the foregoing, the New York plaintiffs have been damaged as follows:

   a. Galvez: approximately $25,500.00 of unpaid overtime premiums and unpaid overtime wages, plus interest;

   b. Champano: approximately $15,345.00 of unpaid overtime premiums and unpaid overtime wages, plus interest;

   c. Hurtado: approximately $8,850.00 of unpaid overtime premiums and unpaid overtime wages, plus interest;

    d.   Terreros: approximately $25,560.00 of unpaid overtime premiums and unpaid overtime wages, plus interest;

    e.   All costs of this litigation, including attorney's fees; and

    f.   Such other and further relief as this Court deems just and equitable.

76.    Each of the NYLL class members has been damaged in an amount to be determined at trial.

### THIRD CLAIM
### (violation of New York Commissioner of Labor's spread of hours wage order)

77.    The New York plaintiffs repeat and re-allege paragraphs 1 through 60, and 64 through 74 above as though fully set forth herein.

78.    The New York plaintiffs sue on their own behalf and on the behalf of the NYLL class pursuant to Fed. R. Civ. P. 23.

79.    Defendants willfully failed to pay plaintiffs and the putative NYLL class members one additional hour's pay at the basic minimum wage rate before allowances for each day plaintiffs and the putative NYLL class members' spread of hours exceeded ten in violation of the NYLL and the wage order of the New York Commissioner of Labor codified as N.Y. COMP. CODES R. & REGS. tit. 12, § 137-1.7 and 137-3.11.

80.    By reason of the foregoing, the New York plaintiffs have been damaged as follows:

    a.   Galvez: approximately $3,400.00 in unpaid spread of hours wages, plus interest;

    b.   Champano: approximately $4,860.00 in unpaid spread of hours wages, plus interest;

    c.   Hurtado: approximately $1,950 in unpaid spread of hours wages, plus interest;

    d.   Terreros: approximately $5,230.00 in unpaid spread of hours wages, plus interest;

    e.   All costs of this litigation, including attorney's fees; and

f.  Such other and further relief as this Court deems just and equitable.

81.   Each of the NYLL class members has been damaged in an amount to be determined at trial.

## FOURTH CLAIM
### (violation of NYLL § 193)

82.   The New York plaintiffs repeat and re-allege paragraphs 1 through 60, 64 through 74, and 77 through 79 as though fully set forth herein.

83.   The New York plaintiffs sue on their own behalf and on the behalf of the NYLL class pursuant to Fed. R. Civ. P. 23.

84.   Approximately one to two times per month, Delgado Travel officials willfully and knowingly falsely accused each of its cashiers of shorts and its travel agents of failing to collect money from their customers (collectively, the "alleged shorts").

85.   The amount of the alleged shorts typically ranged from $20 to over $100 dollars.

86.   Delgado Travel officials demanded that the employee accused of an alleged short personally "repay" the short or be fired.

87.   As a result, each of the New York plaintiffs either had money deducted from their paychecks or paid Delgado Travel directly to satisfy Delgado Travel officials' demands with respect to the alleged shorts.

88.   As a result of the deductions for the alleged shorts, the New York plaintiffs were not paid proper wages as required by the FLSA and NYLL.

89.   Delgado Travel used the money it withheld from the New York plaintiffs and the money it collected from the New York plaintiffs from alleged shorts for its sole benefit, in violation of NYLL § 193.

90. Delgado Travel officials never provided employees accused of alleged shorts with proper evidence of the short even if an employee asked for such evidence.

91. In or about January 31, 2006, Galvez's Delgado Travel supervisors falsely accused her of being short over $400 (the "alleged $400 short"), and demanded that she "repay" the alleged $400 short or be fired.

92. Delgado Travel officials did not provide Galvez with any proof of the alleged $400 short.

93. Delgado Travel withheld Galvez's last paycheck for the pay period of January 21, 2006, until approximately January 28, 2007 in the amount of approximately $590.95 (the "last paycheck") as "repayment" for Galvez's alleged $400 short.

94. Delgado Travel willfully withheld the last paycheck from Galvez without her authorization, and for its sole benefit, in violation of NYLL § 193.

95. By reason of the foregoing, the New York plaintiffs and the members of the NYLL class are entitled to:

    (a) Compensatory damages in the amount of approximately $1,000 per plaintiff and per member of the NYLL class, plus interest from the respective dates of the alleged shorts; and

    (b) All costs of this litigation, including attorney's fees; and

    (c) Such other and further relief as this Court deems just and equitable.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court enter judgment against defendants for the relief set forth in paragraphs 62, 63, 75, 76, 80, 81 and 95 above.

June 26, 2008

|  |  |
|---|---|
| **MICHAEL A. FAILLACE** | ____/s/ Peter G. Eikenberry____ |
| MICHAEL FAILLACE & ASSOCIATES, P.C. | **PETER G. EIKENBERRY** (7257) |
| 110 East 59th Street, 32nd Floor | 74 Trinity Place, Suite 1609 |
| New York, NY 10022 | New York, New York 10006 |
| (212) 317-1200 | (212) 385-1050 |

*Attorneys for Plaintiffs*